IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:24-mj-144 |
| v. ) | |
| ) | |
| RUSSELL RICHARDSON VANE, IV, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE ON CONDITIONS**

The government has filed a criminal complaint alleging that Mr. Vane attempted to produce weapons-grade Ricin without evidence of such a capability, a means of dispersion, and without conducting a full investigation. Mr. Vane has deep ties to his community, is a devoted father and husband, has almost no criminal history, and is an honorably discharged veteran of the U.S. Marine Corps. The letters attached to this memorandum attest to his continuing support by friends and family notwithstanding the extraordinarily serious and overblown charges in this case. Because the government cannot satisfy its heavy burden to establish that no combination of release conditions would reasonably assure the safety of the community and Mr. Vane's appearance as directed, the Court should order his pretrial release under conditions that include surrender of travel documents to counsel, residing with a Third Party Custodian, and GPS monitoring.

**Introduction**

The Court should not be fooled by any claim by the government that crude homemade Ricin is equivalent to weapons-grade material that requires sophisticated technical expertise. Particle size smaller than 5 or 10 microns, and a means to transmit Ricin by injection or inhalation, are required for use as a weapon. *See, e.g.*, Moshiri M, Hamid F, Etemad L. *Ricin Toxicity: Clinical and Molecular Aspects,* Rep Biochem Mol Biol. 4(2) 60-65 (April 2016); *accord* Centers for

Disease Control, Ricin: Epidemiological Overview for Clinicians, available at: https://emergency.cdc.gov/agent/ricin/clinicians/epidemiology.asp. By comparison, a human hair has a diameter of approximately 50 microns.

In a case involving a Georgetown student who actually produced 123 milligrams of Ricin in his dorm room, *United States v. Daniel Milzman*, Case No. 1:14-cr-186 (.D.D.C.), for example, two physicians with expertise in toxicology submitted letters explaining that production of "crude ricin is not difficult, and the methods are widely available on the Internet. Producing highly purified and biologically active ricin, however, is considerably more challenging." Exhibit 1 (letters from Dr. Steven Bird and Dr. Anne-Michelle Ruha). Because of the absence of any evidence as to the particle size of the substance, both experts explained that the ricin at issue in Milzman's case had very little toxicity and was not lethal even if injected or inhaled. *Id.*

Ricin is a byproduct of the production of castor oil from castor beans. In this case, the government states in its memorandum that it found glassware and a funnel that tested positive for Ricin, but unlike Mr. Milzman's case, it found no actual or appreciable amount of Ricin toxin. As such, the allegations in this case are far less serious than those in Mr. Milzman's case, in which the defendant pleaded guilty to the offense of unregistered possession of a toxin or agent and received 12 months and 1 day of imprisonment (amounting to approximately 10 months of imprisonment).

## ARGUMENT

### I. The Court Must Consider All Reasonable Less Restrictive Alternatives to Detention

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act of 1984 therefore provides that a defendant must be released on their personal recognizance or an

unsecured personal bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b); *accord United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). Under circumstances in which a personal recognizance bond is insufficient, the officer must choose "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(c)(1)(B). In other words, the Court must consider all reasonable less restrictive alternatives to detention. *See* § 3142(e).

II. **The Government Bears the Burden of Persuasion Even in a Presumption Case**

To support a finding that the defendant should be detained, the government must show: (1) by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community, § 3142(f); or (2) evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. *See United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988); 18 U.S.C. § 3142(f).

In a case involving a charge that triggers a rebuttable presumption that no such conditions exist, 18 U.S.C. § 3142(e), this statutory presumption shifts "the burden of production to the defendant, but the burden of persuasion remains with the government." 3B Wright & Miller, Federal Practice & Procedure § 765.1; *accord United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) ("Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community."). In other words, even in the context of a statutory presumption case, the defendant only has a burden of production to come forward with "some evidence" to contradict the presumption that no conditions exist that will reasonably assure the safety of the community and reasonably assure the

defendant's appearance. *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *accord United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("As our sister circuits have found, section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.'").

This burden of production "is not a heavy one to meet." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). The defendant simply has the burden to produce evidence "to suggest" that he is neither dangerous nor likely to flee if released on bail. *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). The burden of production is merely "to offer some credible evidence contrary to the statutory presumption." *United States v. Miller*, 625 F.Supp. 513, 519 (D. Kan. 1985). "Any evidence" favorable to a defendant that comes within a category listed in 18 U.S.C. § 3142(g) can rebut the presumption, including evidence of the person's character, mental condition, employment, financial resources, length of residence in the community, community ties, past conduct, prior history related to drug or alcohol abuse, criminal history, and nature and seriousness of the danger that would be posed by the person's release. 18 U.S.C. § 3142(g)(3); *Dominguez*, 783 F.2d at 707. Where the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial, the presumption has been rebutted. *See United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988).

If the defendant proffers evidence to rebut the presumption, the court must consider four factors in determining whether the government has met its burden of persuasion regarding pretrial detention: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to the community that would be posed by the person's release. 18 U.S.C. § 3142(g). *See Hir*, 517 F.3d at 1086; *Jackson*, 845 F.2d at 1265.

In meeting its burden, the government cannot simply argue that the statutory presumption, coupled with the allegations in the charging document, are alone sufficient to satisfy section 3142(g). *Jackson*, 845 F.2d at 1266. The government is required to make a serious attempt to supports its request for pretrial detention by offering extrinsic incriminatory evidence. *Id*. Moreover, the "presumption itself would be inadequate to prove dangerousness, so the prosecution must introduce other evidence in addition." *United States v. Cox*, 635 F. Supp. 1047, 1052 (D. Kan. 1986). Thus, when the presumption is preliminarily rebutted, it is improper to base a finding of dangerousness solely on the presumption. *Dominguez*, 783 F.2d at 707.

Even if the presumption of dangerousness to the community exists under 18 U.S.C. § 3142(e), the defendant cannot be detained unless the government proves, and the Court finds, that there are no release conditions that will "reasonably assure" the safety of the community. *See Hir*, 517 F.3d at 1092; *Dominguez*, 783 F.2d at 707. The Bail Reform Act contemplates only that a court be able to "reasonably assure," rather than guarantee, the safety of the community. *Hir*, 517 F.3d at 1092. Moreover, the government must show inclination to flee, as opposed to the mere opportunity, in order to support pretrial detention. *See Truong Dinh Hung*, 439 U.S. at 1329.

### III. Mr. Vane's Substantial Ties to the Community, His Family and his History of Service to his Country Weigh in Favor of Release

#### A. Mr. Vane's History and Characteristics Reflect Patriotism and Deep Ties to the Community

As reflected in the Pretrial Services Report, Russell "Duke" Vane is 42 years old, and has lived in Northern Virginia for almost his entire life. He is a stable and reliable member of his community, a patriotic veteran of the U.S. Marines, and is dedicated to his family. He lives with his wife Shannon at their home in Vienna, Virginia. They have two children, a 5 month old, and a two year old. As Shannon writes in her letter to the Court, Mr. Vane is a "devoted husband and

a family man." Indeed, Mr. Vane also co-parents his two children from a previous marriage, and even is his ex-wife submitted a letter attesting to his character.

The letters attached to this Memorandum as Exhibit 2 reflect that Mr. Vane is deeply committed to his family, patriotic, reliable, and will abide by all conditions of release imposed by the Court. The letters also reveal that Mr. Vane is the type of person who was relied upon by friends who are in need. These letters were submitted by individuals who wrote of their experiences with Mr. Vane notwithstanding their knowledge of the pending charges. Consequently, they demonstrate the depth of Mr. Vane's ties to his community beyond what the text of each letter says about him. Mr. Vane also has served honorably for eight years in the United States Marine Corps. His patriotic service in the military and for the U.S. government weighs in favor of release, not detention.

Finally, according to the Pretrial Risk Assessment Tool, Mr. Vane falls into risk category I, which is correlated with a 95% likelihood of success when released from pretrial confinement.

**B.  Mr. Vane Does Not Pose a Risk of Flight**

Inclination to flee must be shown to support pretrial detention.  *See Truong Dinh Hung v. United States*, 439 U.S. 1326, 1329 (1978) (application to Circuit Justice).  In *Truong Dinh Hung*, bond was approved for a Vietnamese national convicted of espionage in violation of 18 U.S.C. § 794 notwithstanding the lack of a permanent residence in the United States and the inability to extradite Mr. Truong if he fled to Vietnam.  *Id.*  Given Mr. Vane's extensive ties to this community and his family, the government cannot establish by any measure that he poses a risk of failing to appear at future court appearances.

### C. The Nature of the Charged Offense and the Weight of the Evidence Do Not Require Detention

"[T]he weight of the evidence is the least important of the various factors" to be considered by the Court in determining whether conditions exist which will reasonably assure the appearance of Mr. Vane. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (panel opinion by Kennedy, J.). The weight of the evidence is the least important factor because Mr. Vane is presumed to be innocent. *See* § 3142(j). Moreover, pretrial detention is explicitly not permitted to be imposed as "punishment" for alleged past criminal conduct, no matter how well established. *United States v. Salerno*, 481 U.S. 739, 747 (1987). On the contrary, "[t]he [Bail Reform Act], by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward." *United States v. Madoff*, 586 F. Supp. 2d 240, 250 (S.D.N.Y. 2009). In other words, the weight of the evidence is relevant only to the extent that it supports a finding that Mr. Vane presents an unaddressable risk of flight or danger.

That said, the government has provided no evidence of Mr. Vane's ability or intention to produce weapons-grade Ricin, which is an essential element of a violation of 18 U.S.C. § 175. Indeed, neither the Affidavit in support of the Complaint nor the government's memorandum in support of detention contain evidence that any trace amounts of substances were refined such that that would pose any risk of toxicity from exposure. Nor does the government identify any evidence of a mechanism by which such substances could be transmitted to others. In sum, possession of castor beans and glassware with trace amounts of likely inert and benign Ricin is not the same as evidence of the ability and intention to produce weapons-grade biological toxins.

Given the evidence of Mr. Vane's substantial ties to his community, his history of service to his country both in the military and as a civilian, his dedication to his family and friends, and

the recommendation contained within the Pretrial Services Report, conditions exist that will reasonably assure the safety of the community and his appearance at future court dates. Specifically, release on the conditions that he remain on home detention with GPS monitoring, turn over all travel documents, live with his wife who will serve as a third-party custodian, not travel outside the Washington metropolitan area, and be monitored by the Pretrial Services Office, would reasonably assure the protection of the community and Mr. Vane's appearance as required at future court proceedings.

WHEREFORE, Mr. Vane respectfully requests that this Court authorize his release on conditions pursuant to 18 U.S.C. § 3142.

Respectfully submitted,

Russell Vane

By Counsel,

_____/s/_____
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
Geremy_Kamens@fd.org